Argued February 8, reversed March 20, rehearing denied April 17, 1923.

## MURRAY *v.* MURRAY.

(213 Pac. 409.)

**Partition—Defendant may have Deed to Plaintiff and Plaintiff's Divorce from Defendant Set Aside for Fraud.**

1. Under Sections 440, 441, Or. L., as to issues which may be raised and determined in a suit for partition, equitable jurisdiction of which is recognized and conferred by Sections 435–483, defendant may impeach for fraud and have set aside and vacated the deed from defendant to plaintiff of an interest in the land, and plaintiff's decree of divorce from defendant confirming plaintiff's title to such interest.

**Partition—Fraud of Plaintiff in Obtaining Deed and Divorce from Defendant Shown.**

2. Fraud of plaintiff in partition in obtaining a deed of an interest from defendant and representations that she would not only

---

1. Power of court to revoke decree of divorce for fraud, see note in 18 Ann. Cas. 1002.

dismiss her suit for divorce from him, but resume her relations with him and not commence any other divorce suit on the same grounds, and in obtaining a divorce from him in a subsequent suit, whereby her title to such interest was confirmed, by inducing him not to appear against her, when she had no ground for divorce, a thing against public policy, *held* shown, so that deed and decree of divorce should be set aside.

From Multnomah: WM. N. GATENS, Judge.

Department 1.

This is a suit for partition. The complaint alleges that the plaintiff and defendant are the owners in fee and tenants in common of certain lots therein described, situate in the City of Portland, and that the plaintiff and defendant each owns an undivided one-half interest therein. It also alleges that prior to the fourth day of December, 1920, the plaintiff and defendant were husband and wife, but that on that date a decree of divorce was rendered dissolving the marriage relations between them. The prayer is for a partition in kind.

To defeat plaintiff's claim for partition and to obtain affirmative relief upon his part, the defendant answered in substance that the plaintiff and defendant intermarried on August 10, 1915, and that at the time of the marriage the defendant was the sole owner of all of the property mentioned in the complaint; that the plaintiff brought nothing to the marriage in the way of property, either real or personal, and had not in any way assisted in the acquisition of the property by the defendant; that subsequent to the marriage, the plaintiff persisted in demanding of the defendant a conveyance to her of an undivided one-half interest in all of his property, and upon his refusal to comply with her demands, threatened to commence proceedings against him for a divorce, and that on or about March 24, 1919, she commenced suit for divorce and

charged him with cruel and inhuman treatment, and by her complaint prayed for a decree awarding her one third of his said property. The answer alleges that these allegations of cruel and inhuman treatment were false and were known by her to be false, and that the divorce suit was brought for the sole purpose of coercing the defendant to deed to her a portion of his said property. The answer also alleges that immediately after the institution of said divorce proceedings and on or about the twenty-seventh day of March, 1919, the defendant, at the suggestion and because of the importunities of plaintiff, agreed to and did convey to the plaintiff an undivided one-half interest in all of said real property upon plaintiff's promise and agreement to dismiss the suit for divorce and to resume her marital relations with him, and to continue thereafter to live with him as his wife, and not to commence any other divorce proceedings; that the consideration expressed in the deed was one dollar and love and affection, but that the sole and actual consideration for the deed was the plaintiff's agreement to dismiss the divorce suit and thereafter to live with the defendant as his wife, and not to commence any other divorce proceedings or to make any demand upon the defendant for any more of his said property; that the defendant at the time believed that the plaintiff made said promises in good faith and that she intended to fully perform the same, and, so believing and relying thereon, was induced to and did execute said deed, conveying said one-half interest in said property to the plaintiff. The answer then charges that at the time the plaintiff entered into said agreement and received said deed, it was her intention to violate and break said agreement and to extort further funds and property from defendant by the commencement of another suit for divorce. It also al-

leges that shortly after the execution of the deed, the plaintiff, at her request, was furnished by the defendant with sufficient money to make a trip to New York for the purpose of visiting her relatives, and that she remained away the entire summer of 1919, and returned to defendant's home, bringing with her as her guests the family of a relative, consisting of three persons, who lived thereafter with the plaintiff and the defendant at defendant's home. The answer then alleges that on the twenty-third day of April, 1920, the plaintiff, disregarding her agreement with the defendant, again instituted a suit for divorce upon identically the same grounds as alleged in her first complaint, and that in and by her complaint in her later suit, the plaintiff prayed that she be decreed to have one third of the one-half interest of the defendant still remaining in said property. It then alleges that no additional charges were made in the second suit; that the charges were those contained in the complaint filed in the first suit; that the defendant then employed counsel and filed an answer denying the allegations of plaintiff's complaint; that the plaintiff, with the object and for the purpose of causing the defendant to abandon his defense in the latter suit and to confirm the deed given to the plaintiff for an undivided one-half interest in said property, caused other parties to inform the defendant that the deed given by him to the plaintiff could, under no circumstances, be set aside, and that if the defendant should contest the latter suit, he was in danger of losing one third of his one-half interest remaining in said property, and that to avoid this, by intimidation and duress, the defendant was induced to sign an agreement prepared by plaintiff's counsel permitting the plaintiff to obtain a divorce without contest and allowing said one-half interest in said property to be confirmed

in her by the terms of the divorce decree; that the defendant was ignorant of the fact that such an agreement was illegal and was ignorant of the fact that he had a right to have the deed to the plaintiff set aside, and on December 1, 1920, signed the agreement by the terms of which he agreed to allow the plaintiff to obtain a divorce upon her own testimony, and to permit the deed to be confirmed by the decree of divorce, and that in and by the terms of said agreement, it was provided that the property should later be divided by partition, and it was agreed between the parties that the court should hear the testimony of the plaintiff only, although the plaintiff and the defendant both knew that the allegations of cruel and inhuman treatment charged in the complaint were false and untrue, and that plaintiff had, in fact, no cause of suit for divorce. It was also alleged that the plaintiff demanded and defendant gave her over $600 in cash and government bonds of the value of $150, which payment the answer alleges was made under intimidation and duress and in ignorance of defendant's rights in the premises and of the illegality of the agreement itself. Then follows an allegation that the agreement was null and void, contrary to public policy and unenforceable in equity; that the decree of divorce was granted on the fourth day of December, 1920, under said collusive agreement, and upon the false testimony of the plaintiff, and by means thereof, the court was deceived in granting the divorce, which would not have been granted if the true facts had been known. It is also alleged that the decree should be set aside and vacated because of said fraud, and the parties be restored to their former status of husband and wife. Then follows an allegation that on March 27, 1919, at the time the deed was executed, the plaintiff had no love or affection for the

defendant, although pretending to have, and that at the time of the conveyance the plaintiff secretly did not intend to live with the defendant, but to secure as much of his property as possible, and in pursuance to said plan, plaintiff, in April, 1920, commenced the second suit for divorce, contrary to her express promise to defendant as aforesaid; that the deed given by defendant to plaintiff was not supported by any consideration whatsoever moving from plaintiff to defendant and is null and void and should be set aside and canceled and the defendant be decreed to be the owner of the whole of said property; and that because of the foregoing the complaint is without equity and the same should be dismissed.

The reply puts in issue all of the allegations of the answer, except it admits defendant's sole ownership of the property up to March 27, 1919, and the filing of the first complaint on March 24, 1919, the execution of the deed by the defendant to the plaintiff on March 27, 1919, the commencement of the second suit for divorce, and that in the prayer of the complaint in the second suit, the plaintiff prayed for a decree for one third of defendant's one-half interest in said real property, and that defendant paid to the plaintiff as a property settlement the sum of $500 in money and delivered to her $150 in Liberty Bonds.

Upon the trial of the cause the Circuit Court appointed three referees to partition the property, and upon their report a decree was entered partitioning the property and allotting one half thereof in severalty to the plaintiff in accordance with the report of the referees and the prayer of her complaint. The court also allowed the plaintiff $500 as attorneys' fees in the partition suit and decreed that $250 thereof should be a lien against defendant's one-half interest in said property. The court also, on an *ex parte*

application therefor, appointed a receiver to take charge of and collect the rents of said property, and directed him to pay from the rentals collected by him the attorneys' fees allowed and the costs and disbursements of this suit. From this decree the defendant has appealed.     REVERSED.     REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Manning & Harvey,* with an oral argument by *Mr. John Manning.*

For respondent there was a brief over the names of *Mr. Henry E. McGinn* and *Mr. Wilber Henderson,* with an oral argument by *Mr. Henderson.*

RAND, J.—1. Plaintiff, claiming to be the owner of an undivided one-half interest in the lands described in the complaint, seeks to obtain a partition of said lands and to have her portion thereof allotted to her so that she can hold the same in severalty. She bases her right and estate in said lands upon a deed executed by the defendant conveying to her an undivided one-half interest in said lands and upon a decree dissolving the marriage relations between the plaintiff and the defendant, which, by its terms, confirms plaintiff's title to an undivided one-half interest in said lands. By his answer the defendant seeks to impeach the validity of said deed for fraud in its procurement as well as in the consideration thereof, and to have the decree of divorce vacated and set aside on the ground that the said decree was fraudulently obtained. By the allegations of the answer the defendant presents an issue arising out of the relation of the plaintiff and defendant to the common property involved in the suit, which, if sustained, requires the annulment and cancellation of the deed and the

vacating and setting aside of the decree of divorce. That an issue of this nature may be affirmatively alleged as a defense in a partition suit is clear. Under Sections 440 and 441, Or. L., in a suit for partition, "The defendant shall set forth in his answer the nature and extent of his interest in the property," and "The rights of the severeal parties, plaintiffs as well as defendants, may be put in issue, tried and determined in such suit."

"When a suit for partition," says Mr. Freeman in his work on Cotenancy and Partition (2 ed.), Section 505, "is in a court of equity, or in a court authorized to proceed with powers as ample as those exercised by courts of equity, it may be employed to adjust all the equities existing between the parties and arising out of their relation to the property to be divided. 'He who seeks equity must do equity.' Hence whoever, by a suit for partition, invokes the jurisdiction of a court of equity in his behalf, thereby submits himself to the same jurisdiction, and concedes its authority to compel him to deal equitably with his cotenants. As the equities of the cotenants may arise from a variety of circumstances, it follows that the assertion of these equities necessarily introduces into partition suits a great variety of issues, and calls for various allegations in the respective complaints and answers which would not be required in ordinary suit for partition not complicated by any special equities between the cotenants." In the next section he says: "The equities which may be adjusted and enforced in a suit for partition are such only as arise out of the relation of the parties to the common property." In a footnote, he quotes from *Dall* v. *The Confidence Silver Mining Co.,* 3 Nev. 535, in part as follows: "and in disposing of the cases for partition, the equities of the respective

parties growing out of their ownership of the property as tenants in common or otherwise are taken into consideration and disposed of upon the broad principles which govern those courts in the administration of justice.''

Equitable jurisdiction over suits for partition arose from the inadequacy of the legal remedy, and ''As early as the reign of Elizabeth, partition became a matter of equitable cognizance; and now the jurisdiction is established as of right in England and in the United States.''    4 Pomeroy, Equity Jurisprudence (3 ed.), § 1387.    This equitable jurisdiction of suits for the partition of real property is recognized and expressly conferred upon courts of equity by statute in this state: Sections 435–483, incl., Or. L.

Hence, it follows that this court in this suit has full and complete jurisdiction to award to either party, plaintiff or defendant, such equitable relief as, under the issues raised by the pleadings and under the facts established by the evidence, such party is equitably entitled to.

It was established by the evidence in this cause that the plaintiff and defendant intermarried on August 10, 1915; that the defendant was hard-working, industrious, saving and thrifty, and at the time of the marriage was well past the meridian of life; that for years he had been a laborer working at Portland, Oregon, as a stevedore and longshoreman, and had accumulated considerable property consisting of houses and lots in Portland, Oregon; that he was occupying one of these houses and renting the others; that the plaintiff, who seems to be much younger than the defendant, was a trained nurse, and at the time of the marriage possessed neither money nor property of any kind.    After the marriage the defendant took the plaintiff on a trip to San Francisco and then

returned with her to Portland, where they lived until
May, 1916. At that time the plaintiff claimed to be
pregnant and claimed that a Caesarean operation
would be necessary. At her suggestion she went to
New York City, where she remained some six months,
and then returned to defendant's home, bringing with
her her sister, her sister's husband and her sister's
child, all of whom, for some time thereafter, lived
with defendant at his home. This trip, the defend-
ant testified, and it was uncontradicted, cost him
$1,000. If plaintiff was with child as claimed, the
record is singularly silent as to what happened to it
or became of it. After her return the parties seemed
to have lived happily together until March 23, 1919,
when the plaintiff, for no reason discoverable from
the testimony, left defendant's home saying she was
going to visit her sister. Instead of going there she
went to the Y. W. C. A. Building and on March 24,
1919, the defendant was served with summons and
complaint in the first divorce suit. A day or two
later the defendant went to the room where the plain-
tiff was stopping, and his version of what there oc-
curred is as follows:

"I went up and she was feeling awfully bad, said
she fell down the stairs at the Y. W. and may have
broke her ribs. I said, 'What have I done to you
that you have done this?' 'Oh, you know, you did
not treat me right,' she said. I said. 'I am will-
ing to treat you right.' She said, 'If you died I
wouldu't get one penny.' I said, 'Nonsense, whatever
is coming to you, the law allows.' She said, 'You
have got to give me a third interest in the place and
everything you have in order to protect me.' 'My
goodness,' I said, 'If it is that bothering you so bad I
will deed you two or three houses, I will deed you the
house you live in.' I said, 'Let's go up to Mr. Groat
and draw up the deed.' She didn't ask particular
thing. Mr. Groat said, 'You are liberal, the law only

allows her a third.' 'I said, 'Give her a half.' 'Now, understand, Catherine,' I said, 'this is final.' 'I don't believe in divorces, my creed don't allow it, now it is distinctly understood there will be no more divorces, I am doing this to protect you.' She said, 'I am satisfied, and will be no more trouble.' ''

Her version of the affair is as follows:

''Q. After you brought the first divorce suit what took place then between you and Mr. Murray? A. I went over to the Y. W.; I was staying there and Mr. Murray came over I think the third or fourth day, and he told me that if I would come back and live with him and not disgrace him he would give me all his property, all the money I wanted, a key to the strong box and that I could go and collect the rents and use all the money I wanted and he would put the other money in the bank. I said that Mr. Murray didn't have enough money for me to go back and live with him, that his property wasn't any inducement, that I married him because I was in love with him and went to live with him because I wanted a companion and Mr. Murray was exceedingly nice to me for two months.''

Thereupon and on March 27, 1919, the defendant executed and delivered to the plaintiff the deed in question conveying to her one half of his real property and the parties returned home and resumed their marital relations. They lived together until some time in June following, when the plaintiff informed the defendant that her mother in New York City was ill and requested the defendant to furnish her with money to make a trip to New York to see her mother. The defendant provided the money as requested and the plaintiff left for New York. How long she remained away the record does not disclose, but she was gone for several months and returned by way of San Francisco, where she was met by the defendant who brought her to their home at Portland. She re-

mained with the defendant until some time in April, 1920, when she again left defendant's home for no reason apparent from the record, and without making any complaint to the defendant or informing him that she intended to leave him or commence suit for divorce. Thereupon, for a second time, she commenced suit for divorce, and alleged as grounds for divorce in the second suit, the identical grounds and none other than those alleged by her in her first suit. By her complaint in her second suit, she sought to recover from the defendant one third of the one-half interest that he then had in the property, and also one half of the amount due upon a note and mortgage held by the defendant, one half of the amount due the defendant upon a contract of sale that he had made, and $150 in Liberty Bonds, alleging that the sums so claimed by her were gifts made to her by the defendant. She also filed in said suit an affidavit stating that she was without means or property to enable her to employ attorneys or to maintain the suit, and moved for an order compelling defendant to pay her $75 per month for support, and to provide the fees for her attorneys in the suit. Thereupon the defendant appeared in the suit and filed an answer denying the allegations of her complaint and subsequently he entered into a written stipulation with the plaintiff. He alleges that, in ignorance of his legal rights, he was induced to make this stipulation by threats of the plaintiff communicated to him by third parties that if he refused to stipulate the plaintiff would secure one third, if not all, of his remaining one-half interest in the property.

The defendant contends that the sole consideration for the execution and delivery of the deed was plaintiff's promise to dismiss her then pending divorce suit, and thereafter to live and cohabit with him and

not commence any other divorce proceedings against him. The subsequent conduct of the parties sustains this contention. He gave her the deed. She dismissed the suit, and then resumed their marital relations. If the defendant had intended to deliver the deed to the plaintiff as a gift and she had accepted it as a gift and there had been no conditions attached to it, it is not reasonable to suppose, whether she had grounds for divorce or not, that she would have dismissed her divorce proceedings or that the parties would have resumed their marital relations. It is therefore obvious that the defendant did not intend to convey one half of his property to his wife upon any other consideration than that she should thereafter live with him as his wife and should not commence any other divorce proceedings against him.

2. After a careful consideration of all of the testimony offered in this cause and of the records and files of the cause, we are convinced that the plaintiff, in obtaining a deed for an undivided one-half interest in defendant's property, not only induced the defendant to believe, but that she expressly promised, that whatever difficulties, if any, may have existed between them prior thereto, would be forgotten and forgiven by her and that they should no longer be deemed or considered by her as grounds for a later divorce, and that by her words and conduct she led the defendant to believe that she would, in good faith, resume her marital relations with him.

The evidence thoroughly satisfies us that the plaintiff, in consideration of the execution and delivery of the deed, did expressly promise the defendant to resume her marital relations with him, and that she would not subsequently sue him for divorce. Even if the plaintiff did not expressly make this promise, the law would imply such a promise upon her part

from the nature of the transaction and the conduct of the parties. As the plaintiff was thereby obligated to continue her marital relations with the defendant, the defendant himself was obligated to so conduct himself thereafter that the plaintiff should sustain no ground for divorce. The obligations of the parties in this respect were mutual, and unless the defendant did give the plaintiff grounds for divorce subsequent to the execution and delivery of the deed, the plaintiff has violated the only consideration for which the deed was given. It would therefore be inequitable to permit the plaintiff to retain title to the property without compelling her to comply with her agreement and the obligations she assumed in accepting the deed.

If the evidence in this case had disclosed that subsequent to the time of the execution and delivery of the deed, the defendant had been guilty of conduct toward the plaintiff entitling her to a divorce, such misconduct upon his part would have relieved her from her obligation not to commence suit for divorce. But a careful inspection of the complaint filed by her in the second divorce suit shows no allegation by her of any misconduct upon the part of the defendant subsequent to the execution of the deed, except that contained in the following quotation:

"Plaintiff accepted defendant's offer of reconciliation and dismissed her said suit and returned to live with the defendant, but defendant has in no wise mended or bettered his conduct toward the plaintiff. On the contrary his conduct and behavior in all respects hereinbefore alleged has grown steadily worse and plaintiff's life with defendant has been rendered so unbearable that she is no longer able to endure it."

This excerpt from her complaint charges the defendant with no specific act and merely alleges her

conclusion that the defendant has in nowise mended or bettered his conduct toward the plaintiff and that his conduct and behavior in all respects has grown steadily worse. All of the charges made in the complaint refer to matters anterior to the execution of the deed.

The plaintiff was called as a witness in this suit by the defendant, and she was interrogated by defendant's counsel as to the charges and matters referred to in her complaint in the divorce suit, and from her testimony it is apparent that she had no legitimate ground of complaint, and was not entitled to a divorce upon any of the grounds alleged in her complaint. In that complaint she unequivocally stated, in effect, that notwithstanding the defendant was a man of considerable property and means, and always had money at his disposal, had always failed, neglected and refused to provide her with sufficient money to adequately meet the necessary household expenses and had required her to conduct the household on an allowance of $20 per month during their entire married life, which sum was wholly inadequate for such purpose. During her examination it was disclosed that this statement upon her part was a pure and baseless fabrication. From her own admissions, it appears that she had unlimited credit with two of the largest department stores in Portland, and that she exercised this credit without stint. Other evidence, convincing to us, shows that she was supplied with a large portion of defendant's income. Her testimony having convicted her of making groundless charges against the defendant, and the evidence having conclusively established that these charges were baseless and unfounded, and were made without the slightest regard for the truth for the mere purpose of

securing a divorce, convinces us that plaintiff at no time during her married life had any legitimate ground for complaint of misconduct or mistreatment of her on the part of defendant.

By her complaint the plaintiff charged the defendant with cruel and inhuman treatment, but the evidence satisfies us that he was a kindly, affectionate, generous and faithful husband, and that the plaintiff herself was of a grasping and avaricious disposition, and was interested in him only to the extent of despoiling him of his property. It is unnecessary for us to review this testimony any further or to cast needless reflections or aspersions upon the motives of the plaintiff further than to say that the plaintiff's conduct toward the defendant in respect to securing his property for herself, does not entitle her, in our judgment, to equitable consideration, and it is therefore the duty of the court to leave her where she was before she had obtained an undue advantage over the defendant.

Having accepted a deed from the defendant for one half of all of his property as a consideration for her dismissal of the divorce suit, and having promised to resume and maintain her marital relations with the defendant, there was an implied obligation at least upon her part that she would not resume those relations for the purpose of further despoiling the defendant of his property. After living with him but a few months, and after having been the recipient of his generosity, she again sued him for a divorce and again asked for an additional interest in his property. It appears that he was induced, through misapprehension of his rights, to sign a stipulation which, on its face, was a fraud and against public policy. The lower court, in ignorance of the fraud, was in-

duced to grant a divorce. This stipulation opened as follows:

"It is hereby stipulated between the parties to the above-entitled cause that the same shall be heard upon the evidence which the plaintiff may offer; that in case a divorce is granted by the court on the plaintiff's proof, property and business matters shall be adjusted between the parties on the following basis, and the decree of the court shall provide accordingly."

The fair import of this language is that the plaintiff shall be permitted to obtain a divorce upon such evidence as she shall offer, and that the defendant himself shall not in any way oppose her getting the divorce, nor offer any proof in his own behalf, no matter how false or fraudulent the proof offered by her might be.

The public interest in divorce suits in this state is such that a stipulation of this kind is against public policy, and anything done in carrying out the fraudulent scheme intended is fraud. This stipulation was carried out. The plaintiff herself offered testimony. The defendant offered none. And defendant paid over the costs covered by the stipulation and delivered the $150 in Liberty Bonds and paid to the plaintiff the stipulated sum of $600 in money and she secured her divorce, and it is this decree of divorce so secured that the defendant seeks to have vacated and set aside as fraudulent and against public policy. By the decree so secured in that suit, the plaintiff's rights and interest in the lands conveyed to her by her husband were confirmed. To reach this property, it is necessary to set aside not only the deed, but the decree of divorce itself. The fraud charged in the answer has been established by clear, satisfactory and convincing evidence. This fraud en-

tered into the procurement of the decree of divorce and vitiates the decree itself.

For these reasons the decree of the lower court will be reversed, and in lieu thereof a decree will be entered annulling and canceling the said decree and vacating and setting aside the said decree of divorce rendered in the lower court in favor of the plaintiff, Catherine A. Murray, and against the defendant, Patrick Murray. The plaintiff and the defendant will be restored and reinstated to all their original marital rights and duties. The defendant, Patrick Murray, will be restored to and reinvested with all of his original rights and the sole ownership of the lands mentioned and described in said deed.

REVERSED.    REHEARING DENIED.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.